UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EVARISTE MUGIRANEZA,

                              Petitioner,

-vs-

MATTHEW G. WHITAKER, Acting Attorney General of the United States; THOMAS FEELEY, Field Office Director for Detention and Removal Buffalo Field Office Bureau of Immigration and Customs Enforcement Department of Homeland Security; JEFFREY SEARLS, Facility Director Buffalo Federal Detention Facility,

                              Respondents.

**No. 6:19-cv-06140-MAT**
**DECISION AND ORDER**

## I. Introduction

Proceeding *pro se*, Evariste Mugiraneza[1] ("Mugiraneza" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the respondents (hereinafter, "the Government")[2] challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). For the reasons discussed below, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed.

---

[1] The Clerk of Court is directed to correct the spelling of the petitioner's name; it should be "Evariste" not "Evaruste."

[2] The Clerk of Court is directed update the official case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker.

## II. Factual Background

The factual background below is drawn from the Declaration of Brandon Smith ("Smith Decl.") and attached Exhibits (Docket No. 6-1).

Mugiraneza, a native and citizen of the Democratic Republic of Congo ("DRC"), was admitted to the United States at New York, New York, on or about September 24, 2014, as a refugee (RE-2).

On October 3, 2015, the City of Syracuse Police Department arrested Mugiraneza for Assault in the Second Degree (intent to cause serious physical injury) in violation of New York Penal Law ("P.L.") § 120.05(1). P.L. § 120.05(1) is a class D felony and an offense for which a sentence of imprisonment of one year or longer is authorized. According to the police report filed, Mugiraneza entered his estranged wife's apartment without permission, hit and kicked her repeatedly about the head and neck, causing a fracture of one of her cervical vertebrae. An Onondaga County grand jury subsequently indicted Mugiraneza on four counts: Assault in the Second Degree in violation of P.L. § 120.05(1), Unlawful Imprisonment in the First Degree in violation of P.L. § 135.10, Criminal Possession of Stolen Property in the Fourth Degree in violation of P.L. § 165.45(2), and Petit Larceny in violation of P.L. § 155.25.

On March 3, 2016, Mugiraneza pleaded guilty in Onondaga County Court to P.L. § 120.05(1) in full satisfaction of the indictment.

On May 13, 2016, he was sentenced principally to 5 years' probation.

On June 24, 2016, United States Immigration and Customs Enforcement ("ICE") arrested Mugiraneza at the Onondaga County Probation Office. ICE determined to retain him in custody.

On July 1, 2016, DHS issued a Notice to Appear ("NTA"), charging Mugiraneza with being removable under 8 U.S.C. § 1227(a)(2)(A)(i) as an alien convicted of a crime involving moral turpitude committed within five years after his admission to the United States for which a sentence of one year or longer could be imposed.

On February 1, 2017, Mugiraneza had a custodial determination hearing before an immigration judge ("IJ") pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated* 138 S. Ct. 1260 (2018). The IJ denied Mugiraneza's request to change his custodial status, finding that DHS had established that he is a danger to the community. Mugiraneza appealed the denial of bond to the Board of Immigration Appeals ("BIA"). On May 4, 2017, the BIA dismissed his appeal, concluding that the IJ did not err in finding that the DHS demonstrated by clear and convincing evidence that Mugiraneza poses a danger to the community.

On May 30, 2018, an IJ issued an order stating Mugiraneza was removable as charged. The IJ found Mugiranez statutorily ineligible for asylum or withholding of removal because his offense was a

"particularly serious crime" and, even if the offense were not a "particularly serious crime," Mugiraneza did not carry his burden of proof for demonstrating entitlement to asylum, withholding of removal, or protection under the Convention Against Torture ("CAT"). In addition, the IJ concluded that even if Mugiraneza qualified for asylum, the IJ would deny asylum in the exercise of his discretion. With respect to Mugiraneza's application for adjustment of status under INA § 209(a) pertaining to those admitted to the United States under 8 U.S.C. § 1157 as refugees, the IJ determined that, in light of his criminal conviction, Mugiraneza required a discretionary waiver of inadmissibility. However, the IJ found, Mugiraneza did not qualify for such a waiver. The IJ also denied Mugiraneza's application to adjust his status under INA § 209(a) as a matter of discretion. The IJ accordingly ordered that Mugiraneza be removed to the DRC. Mugiraneza appealed to the BIA, which dismissed his appeal on October 26, 2018.

On October 30, 2018, Mugiraneza refused to complete a travel document application for the DRC Embassy. Consequently, he was placed in "failure to comply" status. Also on October 30, 2018, DHS served Mugiraneza with an I-229, Warning for Failure to Depart and Notice, informing him that he was legally required to assist in his removal.

On November 7, 2018, DHS issued a Warrant of Removal/Deportation for Mugiraneza and requested that the DRC issue a passport or other suitable travel document for him.

On November 19, 2018, Mugiraneza was served with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g).

In the meantime, on November 15, 2018, Mugiraneza filed a *pro se* petition for review of the BIA's decision with the United States Court of Appeals for the Second Circuit ("Second Circuit"), along with a motion for a stay of removal and a motion to appoint counsel. The Government opposed the stay motion and filed a supplement with exhibits on November 26, 2018.

On January 9, 2019, DHS served Mugiraneza with another I-229, Warning for Failure to Depart and Notice.

On January 16, 2019, DHS received a travel document for Mugiraneza's removal from the DRC Embassy and took Mugiraneza out of failure to comply status.

On February 12, 2019, after DHS obtained a travel document for Mugiraneza, the Government asked the Second Circuit to expedite adjudication of the stay motion.

On or about February 20, 2019, DHS issued and served on Mugiraneza a Decision to Continue in Custody. Prior to this decision, Mugiraneza had acquired at least two separate disciplinary reports at the Buffalo Federal Detention Facility based on three violations (possessing of anything not authorized on

July 5, 2018; lying or providing a false statement to a staff member on July 27, 2018; and fighting, boxing, sparring, or wrestling, etc. on July 27, 2018).

On February 13, 2019, Mugiraneza filed the instant *pro se* Petition for a Writ of Habeas Corpus ("Pet.") (Docket No. 1) and Response in Support (Docket No. 2). He asserts that his "prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment's Excessive Bail Clause." Pet. ¶¶ 3, 42-47. Petitioner requests that this Court determine that his detention is not justified because the Government has not established by clear and convincing evidence that he presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond. *Id.* ¶ 4. In the alternative, Petitioner requests that this Court order his release within 30 days unless the Government schedules a hearing before an IJ at which the Government must prove that he presents a risk of flight or danger. *Id.* ¶ 5.

On February 28, 2019, the Second Circuit granted the Government's motion to expedite, granted Mugiraneza's motion to stay his removal, and granted his motion for assignment of *pro bono* counsel. At counsel's request, the filing date for Mugiraneza's

opening brief has been extended to July 3, 2019. Mugiraneza's petition for review remains pending before the Second Circuit.

On April 18, 2019, the Government filed an Answer and Return and Memorandum of Law (Docket No. 6-2). On May 2, 2019, Mugiraneza filed a Reply (Docket No. 8) which is substantially similar to his original Petition. The Petition is now fully submitted. The matter was transferred to the undersigned on May 22, 2019.

### III. Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens

under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

**IV. Discussion**

    **A.    The Due Process Claim**

The Petition's First Claim for Relief asserts that his "ongoing prolonged detention without a hearing violates asserts a

violation of the Due Process Clause of the Fifth Amendment." Pet. ¶ 43. Mugiraneza asserts that "[t]o justify [his] ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that [his] detention is justified by clear and convincing evidence of flight risk or danger. . . ." *Id.* ¶ 42.

To the extent Mugiraneza contends that he has never been afforded an individualized bond hearing, he is incorrect. A bond hearing was held on February 1, 2017, before an IJ, pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated sub nom. Shanahan v. Lora*, 138 S. Ct. 1260 (2018). At that time, Mugiraneza was considered to be detained pursuant to 8 U.S.C. § 1226(c) ("§ 1226(c)").[3] Under the Second Circuit precedent in effect at that time, *Lora v. Shanahan*, § 1226(c) "must be read as including an implicit temporal limitation" in order to avoid "serious constitutional concerns" raised by indefinite detention. 804 F.3d at 614; *Hechavarria v. Sessions*, 891 F.3d 49, 57–58 (2d Cir. 2018), as amended (May 22, 2018) (discussing *Lora*). Adopting the Ninth

---

[3] The Government points out that some documents in Mugiraneza's DHS file refer to his detention as being pursuant to § 1226(c) (which provides for mandatory detention of certain criminal aliens). However, because his criminal sentence ultimately did not include a term of imprisonment of one year or longer (requiring mandatory detention pursuant to § 1226(c)), his detention is pursuant to § 1226(a), which "creates a default rule for [aliens already present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018). Section 1226(a) also permits the Attorney General to release those aliens on bond, '[e]xcept as provided in'" § 1226(c). *Id.* at 847 (alteration in original).

Circuit's bright-line rule, *Lora* held that an alien detained pursuant to § "1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention," 804 F.3d at 616 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1132–33 (9th Cir. 2013)). The Second Circuit also followed the Ninth Circuit in holding that the alien "must be admitted to bail unless the government establishes by clear and convincing evidence that [he or she] poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616 (citing *Rodriguez*, 715 F.3d at 1131; footnote omitted).

At Mugiraneza's bond hearing, the IJ "recognize[d] that *Lora* altered the burden of proof and evidentiary standards in bond hearings by shifting the burden from the alien to establish he does not pose a risk of danger to the community and does not pose a flight risk to DHS to establish an alien should not be released on bond. Under *Lora*, an Immigration Judge . . . 'must' set bond 'unless the Government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community.'" Bond Memorandum dated February 16, 2017, Exh. A at 40-41 (Docket No. 6-1, pp. 52-53 of 111) (quotation omitted).

The IJ then observed that *Lora* "did not alter" the well-settled BIA precedent regarding the factors to be considered, such as the extent of the alien's criminal record and the recency and seriousness of his criminal activity. *Id.* at 41 (Docket No. 6-1,

p. 53 of 111) (citations omitted). The IJ explained that he considered the records pertaining to Mugiraneza's criminal conviction and ensuing order of restraint, which indicated that he inflicted "very serious injuries" on the victim (i.e., facial lacerations and a spinal fracture which necessitated the victim wearing a neck brace). *Id.* The IJ also considered Mugiraneza's refusal to accept culpability and his "testimony in which he asserted that the assault had been a 'fabrication' by the victim." *Id.* Although the IJ noted that Mugiraneza's had submitted letters of support from members of the community, the "bond record was notably devoid of any statement" from the victim "indicating that the events that formed the basis of [Mugiraneza]'s conviction were merely a fabrication." *Id.* The IJ also considered the information in the police report that the incident at issue was not the first time Mugarineza had been abusive towards the victim. *Id.* at 42 (Docket No. 6-1, p. 54 of 111). The IJ held that after "thorough consideration of the evidence, including the respondent's criminal record, the seriousness of his offense, and the severity of the injuries sustained by the victim," DHS had "met its burden of showing by clear and convincing evidence that Respondent is a danger to the community." *Id.* Accordingly, the IJ denied Mugiraneza's request for a *Lora* bond." *Id.*

On appeal, the BIA affirmed the IJ's decision on the *Lora* bond determination, finding that Mugiraneza's "criminal record, showing

that he severely beat his wife causing her serious physical harm, supports the . . . determination that the DHS met its burden to show by clear and convincing evidence that [Mugiraneza] is a danger to the community. As this issue is dispositive, the [BIA] need not address the additional issue of whether [Mugiraneza] poses a risk of flight." BIA Order dated May 4, 2017, Exh. A at 45-46 (Docket No. 6-1, pp. 57-58 of 111). The BIA rejected Mugiraneza's argument on appeal that the existence of a past criminal record is not necessarily sufficient to meet the Government's burden pursuant to *Lora*,[4] especially since "his wife, who was the victim of his 'sole indiscretion,' wrote a letter to the [IJ] in support of [him], indicating that he is not a threat to her" and "several members of the Congo local community" submitted letters "that he is not a threat to the community." *Id.* at 46. The BIA found that these letters "do not negate the evidence demonstrating the violence of [Respondent's] assault of his wife." *Id.*

As the foregoing procedural history demonstrates, Mugiraneza's Petition rests on an incorrect factual premise—that he did not receive an individualized bond hearing. Moreover, Mugiraneza enjoyed the benefit of having the burden of proof allocated to the

---

4

On March 5, 2018, a little less than a year after the BIA's affirmance of the denial of bond, *Lora* was vacated, based on the Supreme Court's decision in *Jennings,* 538 138 S. Ct. 830. *See Shanahan v. Lora*, 138 S. Ct. 1260 (2018) (reversing and remanding Second Circuit decision for further consideration in light of *Jennings*). On remand in *Lora*, the Second Circuit did not consider the issues raised by the Supreme Court because, during the pendency of the appeal, the petitioner had received cancellation of removal. Therefore, the case became moot. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018).

Government under then-controlling Second Circuit precedent in *Lora*, *supra*. The Supreme Court "has placed the burden on the Government to justify civil detention or the deprivation of other constitutional rights by making a showing of at least clear and convincing evidence." *Sajous v. Decker*, No. 18-CV-2447(AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) (citing cases where(citing *Zadvydas*, 533 U.S. at 692; *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); other citations omitted). That was the standard applied by the IJ case at Mugiraneza's bond hearing. Thus, Mugiraneza cannot demonstrate that he was denied Due Process at the bond hearing. *Cf. Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *4 (S.D.N.Y. Nov. 14, 2018) (finding due process error where burden of proof at second bond hearing was allocated to alien detained under § 1226(a), where over 37 months had passed since his initial detention, and 34 months had passed since initial bond hearing; due process required Government to bear burden of proof at such a hearing because alien's detention had become unreasonably lengthy).

To the extent that Mugiraneza asserts that the IJ improperly weighed the evidence and testimony, Congress specifically provided immigration officials with the discretion to grant or withhold release on bond, and "[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or

denial of bond or parole." 8 U.S.C. § 1226(e). District courts sitting in habeas review therefore have no jurisdiction to review an IJ's discretionary decision denying bond. *E.g.*, *Hassan v. Holder*, No. 11 CIV. 7157 LGS, 2014 WL 1492479, at \*8-\*9 (S.D.N.Y. Apr. 15, 2014) (citing, *inter alia*, *Hamilton v. Shanahan*, No. 09 CIV. 6869 (SAS), 2009 WL 5173927, at \*3 (S.D.N.Y. Dec. 30, 2009) ("[T]his Court lacks jurisdiction over Hamilton's Petition to the extent it asks the Court to review the weight that the IJ or BIA assigned the evidence or any other discretionary determinations the IJ or BIA made, including the determination that Hamilton must be detained pending a decision on whether he should be removed.") (footnotes omitted)).

### B. The Eighth Amendment Claim

In his second claim for relief, Petitioner asserts that his prolonged detention violates the Eighth Amendment which prohibits "excessive bail." Pet. ¶ 45 (quoting U.S. CONST., amend. VIII). Here, Petitioner has not been granted release on bond; thus, he has no basis for arguing that the Government is asking him to pay an excessive amount of bail in order to be released from custody.

## V. Conclusion

For the foregoing reasons, Claim One of the Petition is dismissed as moot because he has already been afforded a bond hearing that complies with due process. Claim Two of the Petition is dismissed with prejudice because it is factually baseless. The

Court notes that Petitioner may request a subsequent bond hearing if he can show that his circumstances have changed materially, *see* 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."). The Petition therefore is dismissed without prejudice with leave to refile should Petitioner experience a material change in circumstances. No certificate of appealability shall issue. The Clerk of Court is directed to update the case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker, as well as to correct the spelling of Petitioner's first name ("Evariste" not "Evaruste"). The Clerk of Court is directed to close this case.

    **SO ORDERED.**

                                          S/Michael A. Telesca

                                  HONORABLE MICHAEL A. TELESCA
                                  United States District Judge

Dated:    June 6, 2019
            Rochester, New York.